RECEIVED

OCT - 2 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RAYLIN RICHARD | CIVIL ACTION NO.: 11-0083 |
| VERSUS | JUDGE DOHERTY |
| ANADARKO PETROLEUM CORPORATION, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment [Doc. 60] filed by third-party defendant Liberty Mutual Ins. Co. ("Liberty Mutual"). In its motion, Liberty Mutual seeks dismissal of the claims asserted against it in the third-party complaints filed by defendants Anadarko Petroleum Corporation ("Anadarko") and Dolphin Drilling Ltd. ("Dolphin") on grounds the Liberty Mutual CGL Policy issued in favor of Offshore Energy Services, Inc. ("OES") "does not provide coverage for the claims of Anadarko and Dolphin in the Third-Party Complaints." The motion is opposed by Anadarko [Doc. 79], Dolphin [Doc. 77], and OES[1] [Doc. 74]. Liberty Mutual has filed a Motion for Leave to File Reply Brief to all of the Opposition Briefs [Doc. 81], along with a Motion for Leave to Exceed the Page Limitation in connection with its Reply Brief [Doc. 82], both of which are herein GRANTED.

## I.      Factual and Procedural Background

The following factual scenario is undisputed:

This action arises out of the alleged offshore accident of plaintiff Raylin Richard on June 1, 2009. Mr. Richard was employed as a casing supervisor by OES[2] aboard the drillship BELFORD

---

[1] As will become clear with this ruling, OES's standing to oppose Liberty Mutual's motion is not as clear as one might hope, however, given the conflation of issues by all, the argument made by OES is not without application.

[2] The parties do not dispute that OES is a Louisiana corporation.

DOLPHIN, operating in Block 432 of the Green Canyon Area of the Gulf of Mexico.[3]  As the operator of the project, Anadarko[4] contracted for the necessary services and equipment to drill and complete the wells for this prospect.  Anadarko hired OES to provide casing operations under a Master Service Contract; Dolphin to provide drilling services under Dolphin's Offshore Daywork Drilling Contract; and Smith to act as a thread and joint consultant, all under Master Service Contracts.[5]

At the time of the plaintiff's alleged accident, Liberty Mutual had in place a Commercial General Liability policy ("the Liberty Mutual policy") in favor of OES, with a policy period of July 1, 2008 to July 1, 2009.  The policy contains the following provision concerning contractual liability:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY.**

**CONTRACTUAL LIABILITY EXCLUSION AMENDED**

This endorsement modifies insurance provided under the following:

**CONTRACTUAL GENERAL LIABILITY COVERAGE FORM**

    1        Exclusion b of COVERAGE A (Section I Coverages) is replaced by the following:

            b.      Contractual Liability

            "Bodily injury" or "property damage" for which the insured is obligated to

---

[3] The project at this site was being conducted pursuant to a Joint Operating Agreement between Anadarko AE&P, LP ("AEP"), Murphy Exploration and Production Company – USA, and Samson Offshore Company, to develop and produce hyrdocarbons in this area ("the Samurai Prospect").  The parties designated AEP as the "operator" authorized to conduct all operations under the Joint Operating Agreement.

Plaintiff alleges he was performing his duties as a member of the casing crew, while at the time, a joint of casing was being lifted by the vessel crew.  Plaintiff alleges that, suddenly and without warning, the lifting attachment on the joint of casing failed, causing the joint to fall on him, crushing him against the drill floor and other appurtenances of the vessel, resulting in serious injuries.

[4] The briefs make it clear there are different Anadarko entities involved in the instant litigation, but for the purposes of this motion only, this Court will refer to those entities simply as "Anadarko."

[5] The remaining defendant, Hunting, was the designer and manufacturer of the casing and lifting connections in use at the time of the accident.

pay damages, by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

We will defend any claim made or "suit" brought against the indemnitee under an "insured contract" which you are required to defend by the specific terms of such "insured contract", but only to the same extent and on the same terms that we would defend if the indemnitee were the insured under the policy and then only if all of the following conditions are satisfied:

(a)    the claim or "suit" seeks damages for which the indemnitee is legally entitled to indemnification under the "insured contract",

(b)    the policy covers such damages, and

(c)    the applicable Limits of Insurance with respect to such damages has not been exhausted by payment of judgments or settlements.

The policy defines "insured contract" in relevant part as:

f.    That part of any other contract or agreement pertaining to your business . . . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The Anadarko/OES Master Service Contract contains the following language:

12.    <u>Insurance</u> – As to all operations provided for herein, each Party shall carry and maintain for the benefit of the other Party, the following minimum insurance coverage with policy territory sufficient to cover the Work hereunder.

[ . . . ]

(b) **<u>Comprehensive General Liability Insurance</u>**, with limits of **<u>$1,000,000,000 combined single limit per occurrence</u>**, including but not limited to coverage for public liability, bodily/personal injury, advertising injury, property damage premises coverage, contractual liability for those liabilities assumed by the Party herein, cross liability and severability of interest . . . .

As an initial matter, this Court notes it has concern about the manner in which the parties have framed the issues, as the briefing provided is less than clear as to what tenders and demands for and claims made for coverage were made, by whom, and on whose behalf, and those distinctions are not without import or relevance.  Indeed, the parties appear to discuss "Anadarko" and "OES" and "tender" and "making a demand for coverage" interchangeably when arguing, which contributes to the lack of clarity within the briefing.  However, as best this Court can discern, the following occurred:

Dolphin and Smith tendered to Anadarko their defense and indemnification for and of the claims brought against Dolphin and Smith by the plaintiff.  Anadarko assumed the defense and indemnification for and of the claims brought against Dolphin and Smith by the plaintiff.  Anadarko, also, tendered to OES the defense and indemnification of Anadarko as to the tort claims made by the plaintiff against Anadarko, as well as Anadarko's potential contractual liability for the defense and indemnification owed to Dolphin and Smith, and on behalf of Dolphin for Dolphin's possible liability to plaintiff, which Anadarko had assumed pursuant to contracts.  *OES* made a demand for coverage, it would seem, to Liberty Mutual, for *Anadarko's* potential liability as to plaintiff, and for Anadarko's assumed contractual liability now owed to Dolphin and Smith, on behalf of Anadarko and although not clear, on behalf of Dolphin.[6]  Liberty Mutual, acknowledging Anadarko as an "insured" under the policy, accepted the tender/demand for coverage for Anadarko's possible *tort liability* owed to plaintiff *as to Anadarko*, made by OES, on behalf of Anadarko, by responding directly to its acknowledged additional insured, Anadarko, and although not clear, also, denied

---

[6] It would seem Anadarko, as an additional insured, would have been the proper party to make its claim for coverage of its possible liability, to Liberty Mutual, however, OES presented the request for coverage, a distinction that is borne out by the fact that Liberty Mutual responded directly *to Anadarko and not OES*, as was proper for an additional insured under the policy.

coverage of Dolphin.

At this point, the blurring of the status and actions of Anadarko and OES becomes even more problematic.  One must recall that OES made the demand for coverage under the Liberty Mutual policy, for *Anadarko's* potential *tort* liability, *as well as Anadarko's* potential *contractual* obligations now owed to Dolphin and Smith, all of which *OES* had assumed when accepting Anadarko's and Dolphin's and Smith's "tenders."  Liberty Mutual did not reject the demand made for coverage on the basis OES was not the proper party to make a demand for coverage as to Anadarko's corporate  tort and/or contractual liability, or as to Dolphin, rather Liberty Mutual acknowledged Anadarko as an additional insured and responded to the somewhat ambiguous claims for coverage made **by OES**, on *behalf of Anadarko*, by acknowledging *Anadarko* as an additional insured, but distinguishing between coverage for  Anadarko's possible *tort* liability and coverage of/for Anadarko's possible *contractual* liability, by denying coverage to Anadarko for Anadarko's possible *contracual obligations* owed to Dolphin and Smith.  Liberty Mutual, also, denied it owes coverage to Dolphin, in its own right, under the Liberty Mutual policy.  Thereafter, Anadarko filed a third-party complaint against Liberty Mutual, on its own behalf alleging coverage under the Liberty Mutual policy.  Dolphin filed a third-party complaint against Liberty Mutual on its own behalf alleging coverage under the Liberty Mutual policy; and Smith filed a cross-claim against Anadarko for defense and indemnification of/for the plaintiff's claims made against Smith.

Although it is, also, less than clear what specific claims are asserted against Liberty Mutual in the third-party complaints, as best this Court can discern, it appears *Anadarko* filed a Third-Party Complaint [Doc. 30] against Liberty Mutual, seeking, *inter alia*, coverage *for Anadarko* under the Liberty Mutual policy issued in favor of OES, and under which Liberty Mutual acknowledges Anadarko is an additional insured, for *Anadarko's* potential *contractual*  liability, i.e. Anadarko's

assumption of the defense and indemnification of Dolphin and Smith.  Additionally, *Dolphin* filed a Third-Party Complaint [Doc. 32] against Liberty Mutual, seeking, *inter alia,* coverage as an additional insured under the Liberty Mutual policy, issued in favor of OES, for all claims brought against *Dolphin* by the plaintiff.

Notably, OES has not made demand for coverage or filed any claims within this litigation on its own behalf, against any party, including Liberty Mutual.

In the instant motion, Liberty Mutual seeks summary judgment, "dismissing the Third-Party Complaints by Anadarko and Dolphin against Liberty Mutual," all as more filly discussed herein.

## II.      Law and Analysis

### A.      Summary Judgment Standard

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. Proc. 56(a).  As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir. 1994):

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986)).  The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all

the evidence, the court must disregard all evidence favorable to the moving party that the jury is not

required to believe, and should give credence to the evidence favoring the nonmoving party, as well

as that evidence supporting the moving party that is uncontradicted and unimpeached. _Roberts v.

Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.    Rules Governing Insurance Contract Interpretation**

All parties appear to agree the Liberty Mutual policy is to be interpreted in accordance with

Louisiana law.  "An insurance policy is a contract between the parties and should be construed by

using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."

*Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also Fontenot v. Diamond B Marine Services, Inc.*, 937 So.2d 425, 428 (La. App. 4 Cir. 2006). "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract." *Cadwallader* at 580; La. Civ. Code art. 2045. "The parties' intent, as reflected by the words of the policy, determine [sic] the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 2007). As recognized by the Louisiana Supreme Court:

> The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
>
> It is equally well settled, however, that subject to the . . . rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.

*Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1254 (La. 2007)(quoting *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1182-83 (La. 1994))(emphasis omitted).

The words of an insurance contract are not to be read in isolation, as "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. R.S. § 22:881. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."

La. Civ. Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049.

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader* at 580 (internal citations omitted; emphasis in original).

"When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000). "[O]n the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within the policy." *Id.*; *see also Martco Ltd. v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009). If the insurer "cannot unambiguously show an exclusion applies, the Policy must be construed in favor of coverage." *Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009).

### C.   Rules Governing Anadarko-OES Contract

As best this Court can discern, Liberty Mutual does not identify what body of law it argues governs the Master Service Agreement between OES and Anadarko. In its opposition brief, Anadarko argues federal maritime law applies to the Master Service Agreement between Anadarko and OES, and to the Master Service Agreements between Anadarko and Dolphin and Anadarko and

Smith.  Anadarko argues the Master Service Agreement between OES and Anadarko provides for

the application of Texas law in the event maritime law is found not to apply, but argues that for the

issues involved in this motion, maritime law and Texas law appear to be the same.  Dolphin agrees

federal maritime law applies to the master service agreements, but argues it appears Liberty Mutual

"assumes" Louisiana law applies to the contracts.  However, in its reply brief, Liberty Mutual, itself,

does not appear to dispute the application of federal maritime law to the master service agreements.

Considering the foregoing, it appears the parties do not dispute the application of federal

maritime law to the master service agreements, and, therefore, this Court will assume for these

purposes only, without deciding, that federal maritime applies to those contracts.

Under federal maritime law:

> A contract of indemnity should be construed to cover all losses, damages, or
> liabilities which reasonably appear to have been within the contemplation of the
> parties, but it should not be read to impose liability for those losses or liabilities
> which are neither expressly within its terms nor of such a character that it can be
> reasonably inferred that the parties intended to include them within the indemnity
> coverage. Thus, for example, it is widely held that a contract of indemnity will not
> afford protection to an indemnitee against the consequences of his own negligent act
> unless the contract clearly expresses such an obligation in unequivocal terms. A
> contract to indemnify another for his own negligence imposes an extraordinary
> obligation. Thus an indemnitor is entitled to express notice that under his agreement,
> and through no fault of his own, he may be called upon to pay damages caused solely
> by the negligence of his indemnitee. For the same reasons express notice is required
> where a party seeks to shift his contractual liability to indemnify a third party. in
> determining whether or not a contract is ambiguous, our primary concern is to give
> effect to the written expression of the parties' intent.  In doing so, we are required to
> read all parts of a contract together to ascertain the agreement of the parties, while
> ensuring that each provision of the contract is given effect and none are rendered
> meaningless.

*Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981) (internal citations omitted).

Also, importantly, under federal maritime law, a court may not look beyond the written

language of the document to determine the intent of the parties unless the disputed contract provision

is ambiguous. *Corbitt*, 654 F.2d at 332-33, *citing Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 825 (5th Cir. 1975).

**D.      Standing of OES**

As an initial matter, this Court notes the underlying issue at hand is possible coverage *for Anadarko and Dolphin* under the Liberty Mutual CGL policy which was issued to OES, and under which Liberty Mutual acknowledges Anadarko is an additional "insured," but disputes Anadarko is a "named insured," and, under which Liberty Mutual disputes that Dolphin is either a "named insured" or "an additional insured." With these underlying factual distinctions noted, this Court first addresses the argument *of OES* that Liberty Mutual's motion for summary judgment is premature on grounds OES, the only relevant *named insured* under the Liberty Mutual policy, has not filed or asserted any claims against Liberty Mutual, or any other party, to date. OES, thus, argues the contractual defense and coverage issues concerning Liberty Mutual's policy have not been fully joined and, consequently, are not ripe for consideration. In response, Liberty Mutual argues the issues raised in the instant motion are issues of coverage for and as to *Anadarko as an insured in its own right* and *Dolphin, in its own right*, under the Liberty Mutual policy, and, thus, *not coverage as to OES for any OES potential liability*, contractual or tort. Liberty Mutual points out *Dolphin* and *Anadarko* have asserted third-party demands against Liberty Mutual for coverage respectively for *Dolphin* and *Anadarko*, *as additional insureds*, under the Liberty Mutual policy. This Court agrees, noting Anadarko and Dolphin have filed claims against Liberty Mutual seeking coverage under the Liberty Mutual policy *in their own rights*, separate and independent of any rights OES might, or might not, have under the policy.

Therefore, while OES is correct that questions of coverage *for and as to OES* are not before the Court at this time – because it is not disputed that OES has not asserted a claim in this litigation

for coverage *for OES* against Liberty Mutual under the Liberty Mutual policy – both Anadarko and Dolphin have made such a claim within this litigation – thus, the issue of possible coverage for *Anadarko* and *Dolphin*, as possible additional insureds under the Liberty Mutual policy is properly before the Court, as both Anadarko and Dolphin have asserted claims for coverage in their own right as possible additional insureds under the policy by way of third-party claims brought against Liberty Mutual.

Notwithstanding the foregoing, Liberty Mutual, nonetheless, makes certain arguments in its motion for summary judgment that address the issue of coverage *as between OES* and *Liberty Mutual*. As to these arguments, this Court agrees with OES that the issues of coverage *as to OES under the Liberty Mutual policy are premature*.[7] Nonetheless, however, the issue of coverage under the Liberty Mutual policy *for Anadarko*, regarding Anadarko's *contractual* obligation to defend and indemnify Dolphin and Smith, as well as the issue of coverage under the Liberty Mutual policy for *Dolphin*, as an additional insured, for the direct claims made against it by the plaintiff, are ripe for review, and the Court will consider them now.

### E.   Analysis

Although not as clear as one might desire from the briefing, Anadarko as an additional insured under the Liberty Mutual policy, has brought a Third-Party Complaint against Liberty Mutual seeking *contractual liability coverage* under the Liberty Mutual policy for the contractual liability

---

[7] For this reason, the following arguments of Liberty Mutual contained within its brief are premature and not properly considered by the Court at this time: (1) Liberty Mutual's argument that there is no coverage for OES under the Liberty Mutual policy for Anadarko's claim for defense and indemnity of Anadarko's contractually assumed obligation to defend and indemnify Dolphin and Smith; (2) Liberty Mutual's argument that there is no coverage under the Liberty Mutual policy for any breach of contract claim against OES by Anadarko, Dolphin or Smith; and (3) Liberty Mutual's argument that OES has no coverage under the policy for direct claims by its employees arising out of the performance of duties within the course and scope of employment. All of the foregoing arguments contemplate a claim *by OES* for the specific types of coverage *for OES* discussed in the arguments. As OES has not filed a claim against Liberty Mutual, the foregoing arguments are premature and have no bearing on the coverage issues presented as to the claims of *Anadarko* and *Dolphin* against Liberty Mutual.

obligations assumed by Anadarko as to Dolphin and Smith, while *Dolphin* seeks coverage as an additional insured under the Liberty Mutual policy for plaintiff's direct *tort claims* made against Dolphin.  Liberty Mutual seeks dismissal of the claims for coverage of the foregoing, all of which were asserted in Third-Party Complaints filed by Anadarko and Dolphin respectively.  The questions presented are resolved through reference to several provisions of the Liberty Mutual policy and the Anadarko/OES Master Service Contract.

### 1.      Anadarko's claims

First, this Court notes Liberty Mutual concedes Anadarko is an additional insured under the Liberty Mutual policy, although Liberty Mutual does not specifically reference which provision of the policy designates Anadarko as an "insured," but, Liberty Mutual, also, disputes that Anadarko is a "named" insured under the policy – a distinction not without legal consequence.  Review of the policy shows Anadarko is not listed as a "Named Insured" either on the declaration's page or under the "Named Insured Schedule" attached to the "Broad Form Named Insured Endorsement," endorsement serial no. 1, listing additional "named insureds."   Thus, this Court can only assume Liberty Mutual suggests Anadarko is an "additional insured" under the policy by way of the "Blanket Additional Insured Endorsement", which states:

### BLANKET ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

### CONTRACTUAL GENERAL LIABILITY COVERAGE FORM

SECTION II – WHO IS AN INSURED is amended to include as ***an insured any person or organization <u>for whom you have agreed in writing to provide liability insurance.</u>***

In Section II, "you" refers to OES.  The Anadarko/OES Master Service Contract contains the following language:

12.   <u>Insurance</u> – As to all operations provided for herein, each Party shall carry and maintain for the benefit of the other Party, the following minimum insurance coverage with policy territory sufficient to cover the Work hereunder.

[ . . . ]

(b) **Comprehensive General Liability Insurance**, with limits of **$1,000,000,000 combined single limit per occurrence**, including but not limited to coverage for public liability, bodily/personal injury, advertising injury, property damage premises coverage, contractual liability for those liabilities assumed by the Party herein, cross liability and severability of interest . . . .

As neither Liberty Mutual nor Anadarko has cited the Court to the specific provisions of the Liberty Mutual policy granting additional insured status to Anadarko, this Court can only assume the foregoing provision grants such status to Anadarko. This Court need not decide whether, in fact, Anadarko is an additional insured under the Liberty Mutual policy, because no party disputes that it is. Therefore, for the purposes of this ruling, the Court will assume, without deciding, that Anadarko is an additional insured under the Liberty Mutual policy and will assume that status exists by way of operation of the "Blanket Additional Insured" endorsement. However, how Anadarko comes to be an additional insured is not without legal significance.

Nonetheless, once Liberty Mutual concedes Anadarko is an additional insured under the policy, Anadarko is granted all coverages under the policy available to it as an "additional insured." As Anadarko's third-party claim and Liberty Mutual's motion address, it would seem, Anadarko's possible contractual liability, *i.e.*, coverage for Anadarko's assumption of Dolphin and Smith's possible liability to plaintiff, the relevant portions of the Liberty Mutual policy would appear to be those governing additional insureds, contractual liability, and coverage of contractual liability. Contractual liability is both excluded and included from the Liberty Mutual policy by way of the "Contractual Liability Exclusion Amended" which makes no distinction between "named insureds" and "additional insureds," but rather, keys to the definition of an "insured contract." Under the

-14-

policy, contractual liability is excluded, however, the contractual liability exclusion notes the exclusions *do not apply* to liability for damages "[a]ssumed in a contract or agreement that is an **"*insured contract*"** provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement" (emphasis added).  The policy goes on to read:

> We will defend any claim made or "suit" brought against *the indemnitee* under an **"*insured contract*"** which **you** are required to defend *by the specific terms of such* "insured contract", but only to the same extent and on the same terms that we would defend if the indemnitee were the insured under the policy and then *only if all of the following conditions are satisfied* . . . .

(Contractual Liability Exclusion Amended, endorsement serial no. 34)(emphasis added).

> The policy continues to note:

> Throughout this policy the words **"you"** and **"your"** refer to the *Named Insured shown in the Declarations* and any other person or organization *qualifying as a Named Insured under this policy*. The words "we", "us" and "our" refer to the company providing this insurance.

> The word **"*insured*"** means any person or organization *qualifying as such* under **Section II – Who Is An Insured**.

(Commercial General Liability Coverage Form)(emphasis added).

**"Section II - Who Is An Insured"** defines who is an insured; however, that definition, itself, is amended by endorsement serial no. 33:

> SECTION II - **WHO IS AN INSURED** is amended *to include as an insured any person or organization* for whom **you** have agreed in writing *to provide liability insurance*. . . .

(emphasis added).

The Liberty Mutual policy defines "insured contract" as follows:

> f.    That part of any other contract or agreement pertaining to **your business** . . . . . under which **you** assume **the tort liability** of another party to pay for "bodily injury" or "property damage" to a third person or organization.  **Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.**

(Commercial General Liability Coverage Form)(emphasis added)

Thus, the crux of the dispute between Liberty Mutual and Anadarko – vis-a-vis Anadarko's argument concerning *the contractual liability* of Anadarko  – is whether contractual liability coverage extends to Anadarko as a "additional insured" and whether that contractual liability coverage embraces Anadarko for its contractual liability owed to Dolphin, and to Dolphin for its potential tort liability.  Thus, the language of the relevant provisions of the Liberty Mutual policy is paramount.  Consequently, whether the terms "**your business**" and "**you**" as used in the relevant portions of the policy refer(s) only to  "named insureds" under the policy, *i.e.* here, only OES, or whether these terms, also, include "additional insureds," *i.e.* here, Anadarko is pivotal.  As noted, "you" and "your" are defined terms under the policy in the second paragraph of the "Commercial General Liability Coverage Form," quoted above.

Based upon review of the relevant portions of the policy, this Court finds contractual liability coverage keys to the provision encompassing an "insured contract" which is a defined term, which in turn keys to the defined terms "you" and "yours'," which are, also, defined terms which key to "named insureds."  "Named insureds" is also defined within the Declarations Page and the "Named Insured Schedule," attached to the "Broad Form Named Insured Endorsement," endorsement serial no.1, listing "Named Insureds."[8]  By the defined terms of the policy, only OES is a "named insured," thus, at issue can be only contracts "pertaining to the business of" **OES**, as **"you and your,"** as defined under the noted policy provision, and "under which [**OES**] [can] has assumed the **tort liability** of another party" [here, Anadarko] (emphasis added).  Therefore, in this case, under the language of the policy, there is only one relevant "named insured," *OES*, and only one relevant

---

[8]The term "insured" is also defined under the policy in the "Blanket Additional Insured," endorsement serial endorsement no. 33.

"*insured contract,*" the contract between OES and Anadarko; and, thus, under the policy provisions, potential contractual liability coverage exists for only one relevant party, i.e. OES, and *OES* has contracted with *only one party*, Anadarko, and OES can have coverage only, by definition of a covered "insured contract," for that party's possible *tort* liability, i.e. *Anadarko's* possible tort liability to plaintiff.  Indeed, by the language of the definition of an "insured contract," an "insured contract" is one which can assume **only** *the tort liability* of another, here Anadarko.  Thus, OES could have possible contractual liability coverage for its contractual liability obligations for another's possible tort liability, however, **Anadarko** cannot have coverage for ***Anadarko's* *contractual liability*** owed to Dolphin.  It is of note, however, that while the Master Service Agreement between OES and Anadarko may, or may not, require OES to assume the potential *contractual liability* of Anadarko owed to third parties (and perhaps others), there is *no coverage* for any such contractual liability in the Liberty Mutual policy, per the express language *of the policy* itself.  The noted distinction highlights the legal significance, and clear legal distinction between, claims which might have been assumed by contract, and claims actually covered by a given policy of insurance.  Ones' contractual obligations entered into, are not always, as a matter of law, synonymous with ones' insurance coverage obtained.  Thus, OES and Anadarko might or might not have contractual obligations that might or might not be covered by the insurance obtained under a given policy.  Within OES's Liberty Mutual policy, under which Anadarko is an "insured,"contractual liability coverage is excluded, except in certain limited particulars, the limited particulars herein being where an "insured contract" applies as defined, which by its express language, limits itself to the assumption of only *tort* liability, assumed by *"you,"* i.e. OES.

Thus, for the foregoing reasons, this Court concludes, pursuant to the express language of the Liberty Mutual policy, while there might be potential coverage in favor of Anadarko for the

plaintiff's *tort* claims made against Anadarko (as an additional insured under the policy), there is no coverage under the Liberty Mutual policy for *Anadarko's potential contractual obligation to defend and indemnify Dolphin* as an additional "insured" under the Liberty Mutual policy.

### 2.    Dolphin's claim

Liberty Mutual also seeks to dismiss the third-party claims of Dolphin, which argues Dolphin is an additional insured under the Liberty Mutual policy and thus, owed coverage for the claims made against Dolphin by the plaintiff. There are three possible ways Dolphin might be considered an additional insured under the Liberty Mutual policy, and the Court will address all three possibilities. First, it should be noted Liberty Mutual does not acknowledge Dolphin, as it did Anadarko, as an "insured" under its policy.

The Court will first explore whether Dolphin is an "insured" party under the Liberty Mutual policy in its own right. Review of the policy shows Dolphin is not a "named insured" under the policy, which is defined within the Declarations Page and the "Named Insured Schedule," attached to the "Broad Form Named Insured Endorsement," endorsement serial no.1, listing "Named Insureds." Again, Liberty Mutual does not acknowledge that Dolphin is an "insured." Therefore, this Court next looks to the "Blanket Additional Insured Endorsement," endorsement serial no. 33, to determine whether Dolphin is an additional "insured" under that provision of the policy. As noted, the "Blanket Additional Insured Endorsement" has been amended to include "as an insured any person or organization for whom **you** [here, OES] have agreed in writing to provide liability insurance." Again, under the policy, "you" is a defined term, and in this instance, defined to include "named insureds," and OES is the only relevant named insured. OES has not agreed to provide liability insurance in a contract *between OES and Dolphin*, as OES has not contracted with Dolphin. Consequently, Dolphin is not an additional insured under the "Blanket Additional Insured

Endorsement" of the Liberty Mutual policy.

Next, the Court will explore whether Dolphin can be considered an "insured" under the Liberty Mutual policy through Anadarko, vis-a-vis the Anadarko-Dolphin contract. That is, if *Anadarko*, as an additional insured under the Liberty Mutual policy, also, by way of contract, has the contractual obligation to provide liability insurance to Dolphin, the potential for coverage might arise in favor of Dolphin, depending upon the language of the Liberty Mutual policy. However, this Court has already determined the Liberty Mutual policy does not provide coverage for Anadarko's contractual liability, for all the reasons already set forth in this ruling. Therefore, Dolphin is not an additional insured under the Liberty Mutual policy vis-a-vis Anadarko's contractual liability.

The final way in which Dolphin might be an additional "insured" under the Liberty Mutual policy is if, in the OES-Anadarko contract, **OES** agreed to provide liability insurance *for Dolphin* as well as Anadarko. Review of several provisions of the OES-Anadarko contract are necessary to make that determination. First, this Court looks to the insurance obligations assumed *by OES* and Anadarko in the OES-Anadarko contract, which states:

> 12. <u>Insurance</u> – As to all operations provided for herein, each Party shall carry and maintain for the benefit of the other Party, the following minimum insurance coverage, with policy territory sufficient to cover the Work hereunder.
>
> [ . . . . ]
>
> (b) <u>**Comprehensive General Liability Insurance**</u>, with limits of <u>**$1,000,000,000 combined single limit per occurrence**</u>, including but not limited to coverage for public liability, bodily/personal injury, advertising injury, property damage premises coverage, contractual liability for those liabilities *assumed by the Party* herein, cross liability and severability of interest . . . .

(emphasis added)

Under the policy, "Party" is a defined term, as follows:

"Company [Anadarko] and Contractor [OES] being referred to herein collectively as the "Parties" and individually as a "Party.""

Therefore, within the OES-Anadarko contract, reference to a "party" means reference to *either* OES or Anadarko.  The OES-Anadarko contract goes on to state:

> (h)    For liabilities assumed by the Party herein, all of the above insurance shall be endorsed to provide that:
>
>    (2)    *The Party's* insurers name Company Indemnitees or Contractor Indemnitees,[9] whichever is applicable, as additional insureds (except for Workers Compensation and Property Insurance).

(emphasis added)

Thus, pursuant to the foregoing language, "the party's" (here, OES) "insurer" (here, Liberty Mutual), is required to name "Company Indemnitees" (here, "Company" is defined as Anadarko) as named insureds under the Liberty Mutual policy.  Under the OES-Anadarko contract, "Company Indemnitees" is, also, a defined term, as follows:

> 2.    Definitions –
>
>    (c)    "Company Imdemnitees" and "Company's Indemnitees" means Company, its Affiliates, its joint owners and venturers, if any, and its and their directors, agents, representatives, employees and insurers and its subcontractors and their employees.

Glaringly absent from the definition of "Company Indemnitees" is *contractors*; an omission of considerable legal significance in this matter.  As the omission removes the requisite contractual obligation needed to trigger the Liberty Mutual policy coverage, Dolphin argues to read the contractual language, on its face, including "subcontractors," but omitting "contractors," would lead to a nonsensical result, however, contractor is defined within the contract as Anadarko and

---

[9] "Contractor Indemnitees" is defined within the policy as follows:

> (d)    "Contractor Indemnitees" and "Contractor's Indemnitees" means Contractor, its Affiliates, its joint owners and venturers, if any, and its and their directors, agents, representatives, employees and insurers and its subcontractors and their employees.  Notably absent is reference to "contractors."

referenced as noticed above.  Parties are free to contract for whatever they wish, as long as it does not violate public policy, or render the contract without meaning.  Omitting contractors from one provision of the contract, yet defining "contractor" in another, is not, on its face, nonsensical; business arrangements have created stranger bed partners, thus, a reasonable argument can be made the selection of who was, and who was not included within the insurance provisions, was deliberate, or at least that the omission of "contractor" was not an oversight.

Considering the foregoing, and pursuant to the language in the OES-Anadarko contract, OES is required to name Anadarko's affiliates, joint owners and venturers, directors, agents, representatives, employees and insurers, and its ***subcontractors and its employee*** as additional insureds under the Liberty Mutual policy -- but not its ***contractors***.  Thus, Liberty Mutual argues that because Dolphin is a ***contractor*** of Anadarko, and not a ***subcontractor***, Dolphin is not a "Company Indemnitee" as defined in the OES-Anadarko contract, and as such, is not required to be named as an additional insured under the Liberty Mutual policy, and, therefore is not an additional insured under the policy and its policy language.

In support of its argument, Liberty Mutual points to the Dolphin-Anadarko contract, which, itself, defines Dolphin as Anadarko's ***contractor,*** and not its ***subcontractor***.  Liberty Mutual also points to other provisions of the Dolphin-Anadarko contract, including Definitions 101(f) and 101(n), which clearly differentiate between the terms "contractor" and subcontractor."  Furthermore, Liberty Mutual notes Smith, in its contract with Anadarko, is also defined as a "contractor" of Anadarko, and not its "subcontractor," thereby bolstering Liberty Mutual's argument that the term "contractor" is used deliberately and not accidentally.  Finally, as argued by Liberty Mutual on pages 16-20 of its brief, this Court notes that, traditionally, a party that directly contracts with a company – as Dolphin did here – is considered to be a *contractor*, and not a *subcontractor*, of that company.

*See, e.g., Bayou Steel Corp. v. National Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 506 (5th Cir. 2011). Dolphin has presented this Court with persuasive argument that the traditional understanding of the term "contractor" should not apply in this case, nor has Dolphin presented basis for this Court to overlook the express language of the relevant contract.

Considering the foregoing, this Court concludes  Dolphin is not an additional insured under the Liberty Mutual policy, as Dolphin is neither a "named insured" under the declaration's page nor the "Named Insured Scheduled," attached to endorsement serial no. 1, nor an insured under the "Blanket Additional Insured Endorsement," endorsement serial no. 33; nor is Dolphin an "insured" by way of Anadarko's contractual liability obligations, for all the reasons stated in this Ruling, and finally, Dolphin is not an additional "insured" by way of OES, as there is no contract *as between OES and Dolphin* which might act to trigger coverage; nor is Dolphin an additional "insured" under the Liberty Mutual policy by way of being Anadarko's *contractor*, which might trigger potential coverage.  Consequently, this Court finds pursuant to the language of the Liberty Mutual policy and the noted contractual language, there is no coverage for Dolphin under the Liberty Mutual policy for the plaintiff's direct tort claims against Dolphin – a question which this Court notes is one separate and apart from whether contracts might or might not require defense and indemnification for Dolphin by either Anadarko or OES.  The narrow question addressed by the Court herein, is only one of possible coverage.

As alluded to in the foregoing Ruling, it is less than clear to the Court what specific relief is requested in the instant motion, and similarly, it is less than clear what specific relief the parties request in their third-party complaints.  However, as best this Court can determine based on the arguments made in the briefs, Liberty Mutual's motion for summary judgment is GRANTED as this Court finds no coverage under the Liberty Mutual policy *for Anadarko's claims made in its Third-*

*Party Complaint against Liberty Mutual seeking coverage under the Liberty Mutual policy as an additional insured for Anadarko's **contractual** obligation to defend and indemnify Dolphin (and/or Smith)*.   Therefore, to the extent Anadarko, in its third-party complaint, seeks coverage under the Liberty Mutual policy as an additional insured for Anadarko's *contractual obligation* to defend and indemnify Dolphin (and/or Smith), such claim is DISMISSED WITH PREJUDICE.

Additionally, this Court concludes Liberty Mutual has established that Dolphin is not an additional insured under the Liberty Mutual policy, therefore there is no coverage under the Liberty Mutual policy for Dolphin, as an additional insured, for the direct claims made against Dolphin by the plaintiff.   Consequently, to the extent the foregoing claim was made by way of the Third-Party Complaint filed by Dolphin against Liberty Mutual, and Liberty Mutual's motion seeks its dismissal, the motion is GRANTED, and that claim is DISMISSED WITH PREJUDICE.[10]

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____ day of October, 2012.


REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[10] To the extent the Third-Party Complaints of Anadarko and Dolphin seek other relief against other parties, those portions of the complaints are not dismissed.  However, because it appears the instant motion seeks dismissal of all claims asserted by Anadarko and Dolphin *against Liberty Mutual*, and dismissal of the claims made against Liberty Mutual is appropriate for the reasons stated herein, the instant *motion* is granted in its entirety, and all claims asserted against Liberty Mutual by Anadarko and Dolphin are dismissed with prejudice.