RECEIVED
JUN 21 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RAYLIN RICHARD | CIVIL ACTION NO.: 11-0083 |
| VERSUS | JUDGE DOHERTY |
| ANADARKO PETROLEUM CORPORATION, ET AL. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Pending before this Court are two motions: (1) Motion for Summary Judgment [Doc. 91] filed by third-party defendant Liberty Mutual Ins. Co. ("Liberty Mutual"); and (2) Motion of Anadarko Petroleum Corporation ("Anadarko") to Reconsider the Memorandum Ruling of the Court [Doc. 105].

With respect to the motion for summary judgment, Liberty Mutual prays that this Court "grant summary judgment on the Cross Claim filed by Offshore Energy Services, Inc. ["OES"] dismissing [OES's] claims for defense, indemnity and coverage against [Liberty Mutual] for Anadarko's contractual obligations to defend and indemnify [Dolphin Drilling Ltd.] ("Dolphin") and [Smith International, Inc.] ("Smith"); dismissing [OES]'s claims against [Liberty Mutual] for defense, indemnity and coverage for the claims asserted against it by Dolphin and Smith; and dismissing [OES's] claims against [Liberty Mutual] for coverage for the breach of contract claims filed against it by Anadarko."[1] The motion for summary judgment is opposed by Anadarko [Doc. 113], Dolphin and Smith [Doc. 101], and OES [Doc. 111]. Liberty Mutual has filed a Motion for Leave to File Reply Brief to all of the Opposition Briefs [Doc. 107], and OES has filed a Motion for

---

[1] *See* Motion for Summary Judgment, Doc. 91, at p.2.

Leave to File a Sur-Reply [Doc. 114], both of which are herein GRANTED.

With respect to the motion for reconsideration, Anadarko seeks reconsideration of the Court's October 2, 2012 Memorandum Ruling and Order, in which this Court granted Liberty Mutual's motion for summary judgment, finding no coverage under the Liberty Mutual policy for Anadarko's claims made in its Third-Party Complaint against Liberty Mutual seeking coverage under the Liberty Mutual policy as an additional insured, for Anadarko's *contractual* obligation to defend and indemnify Dolphin (and/or Smith).[2] This Court, also, concluded Dolphin (and Smith) were not additional insureds under the Liberty Mutual policy, and therefore there was no coverage under the Liberty Mutual policy for Dolphin (and Smith), as additional insureds, for the direct claims made against Dolphin (and Smith) by the plaintiff.[3]

---

[2] Although Smith had not filed a Third-Party Demand against Liberty Mutual at the time of the Court's first ruling, because Smith and Dolphin were similarly situated, the Court concluded the same result reached for Dolphin would be reached for Smith if Smith were to assert third party claims against Liberty Mutual. Although it is unclear to the Court, it appears Smith has yet to file a Third Party Demand against Liberty Mutual.

[3] The issue of standing was discussed by the Court in its first ruling, as follows:

> Therefore, while OES is correct that questions of coverage *for and as to OES* are not before the Court at this time – because it is not disputed that OES has not asserted a claim in this litigation for coverage *for OES* against Liberty Mutual under the Liberty Mutual policy – both Anadarko and Dolphin have made such a claim within this litigation – thus, the issue of possible coverage for *Anadarko* and *Dolphin*, as possible additional insureds under the Liberty Mutual policy is properly before the Court, as both Anadarko and Dolphin have asserted claims for coverage in their own right as possible additional insureds under the policy by way of third-party claims brought against Liberty Mutual.
>
> Notwithstanding the foregoing, Liberty Mutual, nonetheless, makes certain arguments in its motion for summary judgment that address the issue of coverage *as between OES* and *Liberty Mutual*. As to these arguments, this Court agrees with OES that the issues of coverage *as to OES under the Liberty Mutual policy are premature*. Nonetheless, however, the issue of coverage under the Liberty Mutual policy *for Anadarko*, regarding Anadarko's *contractual* obligation to defend and indemnify Dolphin and Smith, as well as the issue of coverage under the Liberty Mutual policy for *Dolphin*, as an additional insured, for the direct claims made against it by the plaintiff, are ripe for review, and the Court will consider them now.

2

The motions now before the Court are ripe for consideration and the Court makes the following rulings as to those motions.

I.  **Factual and Procedural Background**

This Court will not belabor the tortured factual and procedural history of this case, all of which were set forth in this Court's October 2, 2012 Memorandum Ruling and Order [Docs. 87 & 89], which are adopted herein, in toto. While the issues before the Court in the prior ruling addressed claims asserted by *Anadarko*, *Dolphin*, and *Smith*,[4] the precise legal question before the Court at this time addresses the legal rights of <u>*OES*</u> – OES having now asserted a claim in the lawsuit -- and specifically addresses what legal rights <u>*OES*</u> might have under the Liberty Mutual policy for the claims made against it by Anadarko, for defense and indemnification, of Anadarko's *contractual* obligations owed by Anadarko to Dolphin and Smith, and for <u>*OES*</u>'s possible *contractual* obligations, if any, owed to Anadarko, as to Anadarko's *contractual* obligations allegedly owed to those other than OES. Although the question now before the Court is a question which is *legally* distinct from the question that was before the Court in the prior ruling, its feet are firmly planted within the subject[s] of this Court's previous ruling.[5]

---

*See* Memorandum Ruling, Doc. 87, pp. 11-12.

[4] Again, even though it appears Smith has not asserted a Third Party Demand against Liberty Mutual, the Court's first ruling addressed any *potential* claims Smith might have asserted against Liberty Mutual, because of the unique factual circumstances of the case.

[5] This Court adopts the standards of review set forth in the Court's previous ruling for the contracts and insurance policies at issue, as well as the general standard of review for analysis of a motion for summary judgment under the Federal Rules of Civil Procedure. *See* Memorandum Ruling, Doc. 87.

II. **Analysis**

1. **Question of coverage for OES for Anadarko's claim against OES for defense, indemnity, and coverage of Anadarko's contractual obligations to defend and indemnity Dolphin and/or Smith**

In the instant motion, Liberty Mutual argues there is no coverage under the Liberty Mutual policy for Anadarko's claim against OES for defense, indemnify, and coverage of **Anadarko's** *contractually* assumed obligation[s] to defend and indemnify Dolphin and/or Smith. This Court agrees.

At the time of the plaintiff's alleged accident, Liberty Mutual had in place a Commercial General Liability policy ("the Liberty Mutual policy") *in favor of OES*, with a policy period of July 1, 2008 to July 1, 2009. The policy contains the following provision concerning contractual liability:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.**

**CONTRACTUAL LIABILITY EXCLUSION AMENDED**

This endorsement modifies insurance provided under the following:

**CONTRACTUAL GENERAL LIABILITY COVERAGE FORM**

    1.    Exclusion b of COVERAGE A (Section I Coverages) is replaced by the following:

        b.    Contractual Liability

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages, by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1)    That the insured would have in the absence of the contract or agreement; or

        (2)    Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

        We will defend any claim made or "suit" brought against the indemnitee under an

"insured contract" which you are required to defend by the specific terms of such "insured contract", but only to the same extent and on the same terms that we would defend if the indemnitee were the insured under the policy and then only if all of the following conditions are satisfied:

(a) **the claim or "suit" seeks damages for which the indemnitee is legally entitled to indemnification under the "insured contract",**

(b) the policy covers such damages, and

(c) the applicable Limits of Insurance with respect to such damages has not been exhausted by payment of judgments or settlements.

The Liberty Mutual policy defines "insured contract" as follows:

f. That part of any other contract or agreement pertaining to **your business** . . . . . under which **you** assume **the tort liability** of another party to pay for "bodily injury" or "property damage" to a third person or organization. **Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.**

(Commercial General Liability Coverage Form)(emphasis added)

This Court has already concluded contractual liability coverage under the relevant Liberty Mutual policy keys to the provision encompassing an "insured contract" which is a defined term, which in turn keys to the defined terms "you" and "yours'," which key to the identified "named insureds." "Named insureds" is, also, defined within the Declarations Page and the "Named Insured Schedule," attached to the "Broad Form Named Insured Endorsement," endorsement serial no.1, listing "Named Insureds."[6] By the defined terms of the relevant policy, only OES is a "named insured," thus, at issue can be only contracts "pertaining to the business of" **OES**, as **"you and your,"** as defined under the noted policy provision, and "under which [**OES**] [can][and] has assumed the **tort liability** of another party" [here, Anadarko] (emphasis added). Therefore, in this case, under

---

[6]The term "insured" is also defined under the policy in the "Blanket Additional Insured," endorsement serial endorsement no. 33.

5

the language of the policy, there is only one relevant "named insured," *OES*, and only one relevant "*insured contract*," **the contract between OES and Anadarko**; and, thus, under the policy provisions, potential *contractual liability coverage* exists for only one relevant party, i.e. OES, and *OES* has contracted with *only one party*, Anadarko. Under the express language of the policy the named insured, OES, can have coverage only, by way of the defined covered "insured contract," for a possible third party's possible *tort* liability, only, i.e. *Anadarko's* possible *tort* liability to plaintiff or a third party. Indeed, by the language of the policy, and in particular the definition of an "insured contract," an "insured contract" is one which can assume **only** *the tort liability* of another, here Anadarko. Thus, the only contract that can meet the definition of an "insured contract" as between the named insured, i.e., OES, and either Anadarko, Dolphin or Smith is the OES/Anadarko contract, and then only to the extent OES might have assumed the *tort* liability of another party, in this case, Anadarko. Additionally, there is no coverage provided for **Anadarko's** possible *contractual* liability to Smith or Dolphin, whether raised by OES or Anadarko. Consequently, **Anadarko** is not provided contractual liability coverage under the Liberty Mutual policy issued to OES, for *Anadarko's contractual liability* allegedly owed to Dolphin and/or Smith, nor is OES provided contractual liability coverage for any possible contractual obligation to Anadarko for any possible contractual liability of Anadarko allegedly owed to Smith or Dolphin. Because the Anadarko/Dolphin and Anadarko/Smith contracts do not pertain to the business of any **named insured** (in this case, OES), these contracts do not fall within the category of **insured contracts** within the meaning of that term as defined in the Liberty Mutual policy, and the limitation of "your

business" as used within the Liberty Mutual policy.[7]

Consequently, the liability of Anadarko, which Anadarko seeks OES to assume – for which OES is now seeking coverage under the Liberty Mutual policy – is Anadarko's possible ***contractual obligation[s]*** to defend and indemnify Dolphin and Smith. The foregoing are ***contract-based liability***, as Anadarko would not have incurred that liability absent the Anadarko/Dolphin and Anadarko/Smith contracts. Again, the Anadarko/Dolphin and Anadarko/Smith contracts are not **insured contracts** as contemplated by the Liberty Mutual policy. Accordingly, there can be no coverage under the Liberty Mutual policy *for OES* for any ***contractual liability of Anadarko*** which might or might not have been assumed, for Anadarko's alleged contractual obligation[s] to defend and indemnify either Dolphin or Smith.

### 2. No coverage for breach of contract claim by Anadarko against OES

Liberty Mutual argues there is no coverage afforded under the Liberty Mutual policy for any breach of contract claim made by Anadarko against OES. Liberty Mutual argues the wording of the relevant policy limits coverage to tort and property damage liability, and the applicable jurisprudence

---

[7] As this Court noted in its previous ruling:

> It is of note, however, that while the Master Service Agreement between OES and Anadarko may, or may not, require OES to assume the potential *contractual liability* of Anadarko owed to third parties (and perhaps others), there is *no coverage* for any such contractual liability in the Liberty Mutual policy, per the express language *of the policy* itself. The noted distinction highlights the legal significance, and clear legal distinction between, claims which might have been assumed by contract, and claims actually covered by a given policy of insurance. Ones' contractual obligations entered into, are not always, as a matter of law, synonymous with ones' insurance coverage obtained. Thus, OES and Anadarko might or might not have contractual obligations that might or might not be covered by the insurance obtained under a given policy. Within OES's Liberty Mutual policy, under which Anadarko is an "insured," contractual liability coverage is excluded, except in certain limited particulars, the limited particulars herein being where an "insured contract" applies as defined, which by its express language, limits itself to the assumption of only *tort* liability, assumed by *"you,"* i.e. OES.

*See* Memorandum Ruling, Doc. 87, at p. 17.

holds breach of contract claims do not give rise to either, tort or property damage liability. Indeed, neither Anadarko nor OES cited this Court to any provision of the Liberty Mutual policy wherein coverage is provided for the insured's possible breach of contract, and this Court's brief review of the policy found no such provision. Consequently, absent language within the policy to the contrary, a breach of contract claim – not being of the nature of tort or property damage, is not included. Consequently, there can be no coverage for OES as to Anadarko's breach of contract claim against OES, under the relevant Liberty Mutual policy.

> 3. **The language of the OES-Anadarko Contract expressly does not provide coverage for Dolphin and Smith as additional insureds, and this Court declines to reconsider its previous ruling holding there is no coverage for the defense, indemnity, and coverage claims by Dolphin and/or Smith, and Liberty Mutual has no duty to defend Dolphin and Smith directly**

In its previous ruling, this Court reviewed several provisions of the OES-Anadarko contract in order to determine whether Dolphin and Smith can be considered additional insureds by virtue of OES's allegedly having agreed to provide certain liability insurance for Dolphin and Smith. The key provisions of the OES-Anadarko contract the Court reviewed are as follows:

> 12. <u>Insurance</u> – As to all operations provided for herein, each Party shall carry and maintain for the benefit of the other Party, the following minimum insurance coverage, with policy territory sufficient to cover the Work hereunder.
>
> [ . . . . ]
>
> (b) **Comprehensive General Liability Insurance**, with limits of **$1,000,000,000 combined single limit per occurrence**, including but not limited to coverage for public liability, bodily/personal injury, advertising injury, property damage premises coverage, contractual liability for those liabilities *assumed by the Party* herein, cross liability and severability of interest . . . .

(emphasis added)

Under the policy, "Party" is a defined term, as follows:

"Company [Anadarko] and Contractor [OES] being referred to herein collectively as the "Parties" and individually as a "Party."

Therefore, within the OES-Anadarko contract, reference to a "party" means reference to *either* OES or Anadarko. The OES-Anadarko contract goes on to state:

> (h) For liabilities assumed by the Party herein, all of the above insurance shall be endorsed to provide that:
>
> > (2) *The Party's* insurers name Company Indemnitees or Contractor Indemnitees,[8] whichever is applicable, as additional insureds (except for Workers Compensation and Property Insurance).

(emphasis added)

Pursuant to the foregoing language, "the party's" (here, OES) "insurer" (here, Liberty Mutual), is required to name "Company Indemnitees" (here, "Company" is defined as Anadarko) as named insureds under the Liberty Mutual policy. Under the OES-Anadarko contract, "Company Indemnitees" is, also, a defined term, as follows:

> 2. Definitions –
>
> > (c) "Company Imdemnitees" and "Company's Indemnitees" means Company, its Affiliates, its joint owners and venturers, if any, and its and their directors, agents, representatives, employees and insurers and its subcontractors and their employees.

In their briefing now before the Court, both Anadarko and OES argue it was always their intent (and indeed, argue it is the custom and practice in the industry) – notwithstanding the express language of the Anadarko-OES, Anadarko-Dolphin, and Anadarko-Smith contracts to the contrary

---

[8] "Contractor Indemnitees" is defined within the policy as follows:

> (d) "Contractor Indemnitees" and "Contractor's Indemnitees" means Contractor, its Affiliates, its joint owners and venturers, if any, and its and their directors, agents, representatives, employees and insurers and its subcontractors and their employees. Notably absent is reference to "contractors."

– that Dolphin and Smith were to have been considered *subcontractors* of Anadarko.[9]

The parties do not dispute the application of federal maritime law to the OES-Anadarko Master Service Contract. Under federal maritime law, this Court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981), *citing Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 825 (5th Cir. 1975). This Court has previously concluded the parties' omission of the term "contractor" from one provision of the OES-Anadarko contract, while defining the term in another, is not, on its face, nonsensical, nor as already explained, an oversight. To clarify the record, this Court specifically concludes specific terms were employed by the parties in the various contracts; the provisions of those contracts at issue are not ambiguous; and the OES-Anadarko contract is not ambiguous or unenforceable as written.

Considering the foregoing, it would be inappropriate for this Court to consider any argued evidence of an intent outside that expressed in the contract, in the formation of the OES-Anadarko Master Service Contract, as the unambiguous provisions of the contract, and the contract itself, being the best evidence of the parties' intent.[10] Because Dolphin and Smith are ***contractors*** of Anadarko **under the express language of their contracts with Anadarko**, furthermore, neither Dolphin nor Smith is a "Company Indemnitee" as defined in the ***OES-Anadarko contract***, and as such, neither

---

[9] A new argument advanced by OES and/or Anadarko is that, because of the structure of the joint operating agreement, "Anadarko AE&P" was actually the lease operator of the entire operation, "Anadarko" was the "prime contractor," and OES, Dolphin and Smith were "subcontractors." This argument, however, is undercut by the Master Service Contract between Anadarko and OES which indicates the contract is between "Anadarko Petroleum Corporation" (not Anadarko AE&P) and OES, which is identified as Anadarko's "contractor" (not its"subcontractor"). Additionally, the contracts between Anadarko and Dolphin, and Anadarko and Smith, specifically refer to Dolphin and Smith as "contractors," not "subcontractors."

[10] To that end, the copious amounts of evidence introduced by OES and Anadarko as to the intent of the parties in executing the OES-Anadarko contract was not considered by the Court. As this evidence forms the basis of the Motion for Reconsideration [Doc. 105] filed by Anadarko, the motion must be denied.

is required to be named as an additional insured under the Liberty Mutual policy. Consequently, neither is an additional insured under the Liberty Mutual policy and its express policy language. This Court's findings – which the Court declines to amend in this ruling – are, as noted, bolstered by the Dolphin-Anadarko and Dolphin-Smith contracts, which, themselves, define Dolphin and Smith as Anadarko's *contractors,* and not its *subcontractors*. Additionally, other provisions of the Dolphin-Anadarko and Dolphin-Smith contracts, including Definitions 101(f) and 101(n), clearly differentiate between the terms "contractor" and subcontractor." As such, this Court cannot ignore the use of the term "contractor" in the relevant contracts when the parties now wish to argue inapposite to those contracts. The Court need not determine if the express and unambiguous language of the OES-Anadarko contract and the consequences which flow therefrom, were, or were not, in hindsight, the result the parties now desire. The parties entered into the contract at issue with full knowledge that contract would be key to the application of certain portions of whatever insurance coverage they obtained to meet any contractual obligations the company might assume. Consequently, the Court must decline to amend the ruling as requested. The matter is, perhaps, a matter better suited for the appellate court.

    Again, the jurisprudence suggests, the custom and practice with respect to the use of a word in the industry cannot be used to change the express language in a contract, particularly in hindsight when such reformation might adversely impact possible third parties who might have relied upon the express language of a contract. Indeed, this Court understands the frustration experienced by counsel for OES and Anadarko, particularly as this Court notes both contracts, and the insurance policy at issue in this case, rank among some of the most inartfully drawn contracts this Court has had the occasion to consider in almost twenty years of federal judiciary experience. Nonetheless,

it is not for this Court, after the fact, to rewrite them.

Considering the foregoing, Anadarko's Motion for Reconsideration [Doc. 105] is DENIED, as there is no coverage for Dolphin and Smith as additional insureds, and this Court declines to amend its previous ruling that there is no coverage for the defense, indemnity, and coverage claims by Dolphin and/or Smith, and Liberty Mutual has no duty to defend Dolphin and Smith directly as to plaintiff's claims.

### 4. The question of reformation

OES, Anadarko, Dolphin, and Smith, now, also, urge this Court to allow them to reform the OES-Anadarko contract to reflect "their true intentions" that any party working under a contract with Anadarko and/or OES – here, specifically, Dolphin and Smith – would to have been considered that party's subcontractor, such that Anadarko and OES mutually intended for the OES-Anadarko contract to obligate OES to defend and indemnify Dolphin and Smith with respect to the plaintiff's claims.

It is unclear what law governs this legal question. Indeed, the OES-Anadarko contract provides:

> 33. <u>Resolution of Disputes</u>: . . . . . The Agreement shall be interpreted in accordance with the laws of the State of Texas or General Maritime Law <u>*whichever is applicable.*</u>

It would seem there is no dispute that the OES-Anadarko contract is governed by federal maritime law, however, it would also seem there is no maritime rule addressing the specific issue of reformation of a contract when a third party (here, Liberty Mutual) may be adversely affected. In such circumstances, Anadarko argues "Texas law, as called for in the MSC, should be controlling," and then goes on to analyze the issue under Texas law. For its part, Liberty Mutual

12

analyzes the issue by citing to a Fifth Circuit case that relies on Louisiana law.

While Anadarko argues Texas law is controlling, it is not clear to this Court that Texas law applies. Indeed, the contract between OES and Anadarko notes the agreement will be interpreted in accordance with the "laws of the State of Texas or General Maritime law, whichever is applicable." In its brief addressing this issue, Anadarko cites a case, *Ham Marine, Inc. v. Dresser Industries, Inc.*, 72 F.23d 454, 459 (5th Cir. 1995), that states:

> We conduct our review of the jury findings according to Mississippi contract law. Concededly, admiralty principles govern contracts for vessel repair and conversion. *To the extent that it is not inconsistent with admiralty principles, however, <u>state contract law</u> may be applicable to maritime contracts.*

(Internal citations omitted) (emphasis added). However, from the foregoing citation, it is unclear whether "the borrowed" state law would be Louisiana or Texas, and if Louisiana, whether the choice of law provision under the contract would be in accordance, or inapposite with Louisiana's expressed public policy, as this Court's limited inquiry suggests the relevant law might be quite difference under the two states' laws. None of these questions have been addressed or argued by the parties.

Again, the question of what law applies is pivotal to the question of reformation. Indeed, this Court's very limited research shows the outcome with respect to reformation could be very different depending upon what law applies to the question. Because of the deficiencies in briefing, this Court cannot answer the reformation question at this time, consequently, the movants have failed to carry their burden to establish they are entitled to the relief requested, *i.e.*, a declaration of reformation of the contract.

### III. Conclusion

For the foregoing reasons,

13

IT IS ORDERED that the Motion for Summary Judgment [Doc. 91], in which Liberty Mutual seeks summary judgment "on the Cross Claim filed by Offshore Energy Services, Inc. ["OES"] dismissing [OES's] claims for defense, indemnity and coverage against [Liberty Mutual] for Anadarko's contractual obligations to defend and indemnify [Dolphin Drilling Ltd.] ("Dolphin") and [Smith International, Inc.] ("Smith"); dismissing [OES]'s claims against [Liberty Mutual] for defense, indemnity and coverage for the claims asserted against it by Dolphin and Smith; and dismissing [OES's] claims against [Liberty Mutual] for coverage for the breach of contract claims filed against it by Anadarko," is GRANTED.

IT IS FURTHER ORDERED that the request for reformation by OES, Anadarko, Dolphin, and Smith is DENIED at this time for failure of the moving parties to carry their burden, however, the parties are free to re-urge the question of reformation in the future within the confines of this Court's scheduling order or the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____ day of June, 2013.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE