RECEIVED

DEC - 2 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RAYLIN RICHARD

-vs-

ANADARKO PETROLEUM
CORPORATION,
DOLPHIN DRILLING LTD.,
HUNTING ENERGY SERVICES,
INC., AND SMITH
INTERNATIONAL, INC.

CIVIL ACTION NO. 6:11-cv-0083

JUDGE DRELL

MAGISTRATE JUDGE KIRK

## RULING

Before the court are three motions for summary judgment filed by Valiant Insurance Co. (Valiant) (Docs. 264–66). For the following reasons, (1) Valiant's Motion for Summary Judgment regarding additional insured coverage will be **GRANTED**; (2) Valiant's Motion for Summary Judgment regarding Offshore Energy Services' (OES) claims for contractual liability will be **GRANTED in part** and **DENIED in part**; and (3) Valiant's Motion for Summary Judgment regarding the drilling rig exclusion will be **GRANTED**.

### I.    Background and Procedural History

The underlying case arises out of a personal injury action filed by plaintiff, Raylin Richard. Plaintiff's claims against every defendant have been settled or disposed of by the court, and plaintiff is no longer a party to this suit.  The issues remaining before the court concern insurance coverage between OES, Anadarko Petroleum Corporation (Anadarko), Liberty Mutual and

Valiant.[1]   In a recent ruling issued March 24, 2015, we ruled that OES and Anadarko were entitled to reform the indemnity provision in their November 2000 Master Service Agreement (MSA). (Doc. 242). Pursuant to that ruling, OES filed a motion to amend its third-party demand against Valiant, which we granted in October 2015.   (Doc. 302).   The amended third-party demand set forth the reformed indemnity provision, which reflects the mutual intent of OES and Anadarko to include "contractors and their employees" within the category of "subcontractors and their employees."   (Doc. 302). Valiant, with permission from the court, then filed the instant motions for summary judgment raising various coverage defenses.   (Docs. 264, 265, 266).

## II.     OES' Waiver and Estoppel Argument

In a recent pretrial conference we were informed that OES intended to put forth a "waiver" defense to Valiant's previously asserted coverage defenses.  For the sake of judicial economy, so that all of the coverage issues could be determined at once, we allowed assertion of the argument and appropriate briefing.    In its "Supplemental Memorandum Addressing Waiver/Estoppel Affirmative Defense in Opposition to Valiant's Three Motions for Summary Judgment..." (Doc. 371), OES claims that, regardless of any applicable coverage exclusion found in its policy, Valiant waived all potential coverage defenses and should be estopped from asserting them in this litigation.

In order to demonstrate that Valiant waived its coverage defenses, OES must show:

    (1)   an existing right;
    (2)   a knowledge of its existence, and
    (3)   an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.  Steptore v. Masco Const.

---

[1] For a complete recitation of the facts and procedural history of this case, see Doc. 242.

Co., Inc., 643 So.2d 1213, 1216 (La. 1994) (internal citations omitted).

Louisiana law charges insurers with knowledge of the contents of their own policies.[2]  To begin, the court does not perceive any genuine dispute as to Valiant's receipt of the requisite notice of occurrence in May of 2011. (Doc. 371-1).  As discussed below, Valiant does possess certain rights under its policy and asserted such rights in its original and amended answers to OES' third-party demand.  Taken together, these facts lead us to conclude that there can be no serious dispute as to the first and second elements of OES' waiver defense.  Instead, the dispute lies within the third element:  did Valiant's conduct induce a reasonable belief that it had relinquished its coverage defenses under the policy at issue?

OES makes two general arguments regarding Valiant's conduct.  First, OES claims that the policy language, particularly that of the contested drilling rig exclusion, represents an express waiver of coverage defenses by Valiant.  We reject this claim for several reasons.  First, the language of the policy's drilling rig exclusion is not "conduct" such as this court understands as is required to be shown here.  Next, testimony by Valiant's underwriter John Moy and claims adjuster Craig Brown as to the "intent" behind the disputed policy language is not relevant conduct. (Doc. 371 at pp. 18-21).  Rather, such testimony is parol evidence of the policy's meaning -- an impermissible foray at this time.  Finally, OES cites no jurisprudence in support of its posited theory that Valiant's adoption of the policy form used by another insurer[3] constitutes an expression of intent to administer claims under that policy in exactly the same manner as did the prior insurer.

OES' second argument that Valiant's claims adjusters failed to follow prevailing industry standards, resulting in a reasonable belief by OES that Valiant waived its coverage defenses in this

---

[2] Id. at 1215.
[3] The previous carrier was XL Insurance Co., which apparently settled a different and unrelated claim.  OES believes we should hold that case's as somehow persuasively required here.

case, is similarly unconvincing.  OES offers testimony by Barry Neville, a Valiant claims adjuster, and Jose Guerrero, its expert on insurance practices, in support of its contention that Valiant's failure to issue a reservation of rights letter advising OES of its intention to pursue coverage defenses was not only a breach of customary claims practices, but induced its reasonable belief that Valiant waived its coverage defenses under the policy.

OES relies heavily on the Louisiana Supreme Court's opinion in Steptore v. Masco Construction Company, Inc. to bolster its overarching argument that Valiant is not permitted, under Louisiana law, to wait three (3) years between learning of the occurrence and asserting its coverage defenses.   We do not agree that the reasoning of Steptore leads to that conclusion in this particular case.  In Steptore, the court found a valid waiver by the *primary* insurer based on the primary insurer's assumption of a defense of its insured without reserving its rights.  While it is undisputed that Valiant never issued a reservation of rights letter to OES in this matter, there is no evidence before the court to suggest that Valiant ever assumed the defense of OES.  Thus, we find that Valiant's failure to issue a reservation of rights letter, without more, does not constitute conduct inducing a reasonable belief in waiver under Steptore.

OES complains of the prejudice it sustained as a result of Valiant's decision to assert its numerous coverage defenses in its original and supplemental answers, filed only after Valiant was formally named as a third-party defendant in this suit and shortly before a scheduled mediation. (Doc. 371 at pp. 24-25).  The court struggles to understand OES' tactical decision not to serve Valiant with a formal demand for defense and indemnity at some time prior to the filing of the 2014 third-party complaint or, alternatively, to simply file its third-party complaint at some earlier

date.[4]  It seems clear that either of these actions by OES would have revealed Valiant's position and placed OES in the best position to assert its claims in this case.  Yet, OES was content with Valiant's "silence" between 2011 and 2014.  Moreover, OES was not forced to proceed with the mediation if, in light of Valiant's then-recent answer to the suit, OES needed additional time to evaluate Valiant's coverage defenses or seek discovery, disclosure, or declaratory relief with the court.  OES' decision to proceed with the mediation was its own.

In summary, the facts as alleged by OES do not show conduct which the court finds would induce a reasonable person to conclude that Valiant waived its coverage defenses under the policy at issue in this case.  To the contrary, given the role of quite competent counsel in this matter from early stages, OES' decision not to ascertain Valiant's position for the benefit of its own interests was not reasonable diligence and appears to be simply an unfortunate or perhaps tactical error.

Accordingly, we reject OES' affirmative defense of waiver, finding that OES fails to prove its prima facie case, particularly as to the third element required by applicable jurisprudence.  Steptore, 643 So.2d at 1216; Arceneaux v. Amstar Corp., 66 So.3d 438, 455 (La. 4 Cir. 2011).

### III.   Valiant's Motion for Summary Judgment Regarding Additional Insured Coverage Under Valiant's Policy (Doc. 264)

In its motion for summary judgment regarding additional insured coverage, Valiant first argues: although OES has stated in its third-party demand that Dolphin Drilling Ltd. (Dolphin) and Smith International Inc. (Smith) are additional insureds under Valiant's Policy, "OES fails to demand or pray that Dolphin and Smith be found to be additional insureds under Valiant's Policy."

---

[4] OES' third-party complaint against Valiant was filed on January 27, 2014.  (Doc. 171).  Valiant's original answer in which it asserted many of its potential coverage defenses was filed on April 21, 2014.  (Doc. 183).  Valiant amended its answer on May 8, 2014, adding more potential coverage defenses.  (Doc. 186).

(See Doc. 264, p. 5). Under Fed. R. Civ. P. 8, a pleading must make "a demand for the relief sought." In its amended third-party demand, OES asks for a judgment in its favor declaring that Valiant "owes full indemnity and insurance coverage for the claims asserted against OES by Anadarko (for itself and on behalf of Dolphin and Smith), [and by] Dolphin and Smith [as] accepted by OES." (Doc. 302). In essence, Valiant avers—yet cites no evidence or authority for the proposition—that it is entitled to summary judgment because OES has not specifically asked the court to recognize Dolphin or Smith as additional insureds under Valiant's policy. Rule 8 does not require such a specific demand for OES to recover. See Doss v. South Cent. Bell Telephone Co., 834 F.2d 421 (5th Cir. 1987); 5 Charles A. Wright, Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1255 (2008). Thus, we find Valiant's argument unpersuasive.

Next, Valiant claims that "OES has provided no evidence which proves that it has standing or the right to assert such claims on behalf of Dolphin or Smith." (See Doc. 264, p. 6). Again, Valiant cites no evidence or authority for its argument. In consideration for OES' paying the entire settlement to plaintiff, Dolphin and Smith signed a "subrogation and assignment agreement" whereby both parties authorized "OES to prosecute any and all claims that Dolphin and Smith may have or had against Liberty or OES' excess carriers arising out of the claims of Raylin Richard." (See Docs. 276-4, 276-5). Under Louisiana law, "all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor." La. Civ. Code art. 2642; Conerly Corp. v. Regions Bank, 668 F. Supp. 2d 816, 823 (E.D. La. 2009). Subrogation is the substitution of one person to the rights of another. La. Civ. Code art. 1825. When subrogation takes place by written contract, the subrogated party "steps into the shoes" of another and is able to "avail himself of the action and security of the original obligee." La. Civ. Code art. 1826. See also Watters v. State, Dept. of

6

Transp. And Development, 768 So. 2d 733, 737 (La. App. 2d Cir. 9/27/2000).  As evidenced by the subrogation and assignment agreement, OES was assigned and subrogated to the right to pursue "any and all claims" that Dolphin and Smith may have had against Liberty and Valiant. Accordingly, Valiant's unsupported argument fails.

Finally, Valiant argues that Dolphin and Smith do not qualify as "additional insureds" under its policy with OES.  We agree.  The "Additional Insureds/Waiver of Subrogation" endorsement under Valiant's policy with OES provides that Valiant "names as **Additional Insured[s]** and waives their rights of subrogation against principals on behalf of whom the **Insured** is providing services."[2] (See Doc. 264-5) (emphasis in original). Under the express terms of the endorsement, Dolphin and/or Smith must be principals on behalf of whom OES was providing services.  Valiant argues that "under Louisiana law, the term 'principal' has acquired a technical meaning," and provided the Court with a definition from the Louisiana Worker's Compensation Law.[3] (See Doc. 264, p. 8). In response, OES asserts that the MSA "brings within its umbrella obligations not only to Anadarko but also its Company Indemnitees." (See Doc. 276, p. 5).  However, Louisiana law dictates that "when the words or a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; Cash v. Liberty Ins. Underwriters, Inc., No. 14-31072, 2015 WL 5172868, at *4 (5th Cir. Sept. 4, 2015).

---

2    The endorsement also has three limitations:

> I.   Only as respects operations performed by the **Named Insured** on behalf of such principals, and
> II.  Only to the extent that such principals have also been named and waived by the **Underlying Insurance**, and
> III. Only to the extent the **Named Insured** is required to do the same by written contract or to the extent the **Named Insured** has actually named and/or waive[d] the **Company's** rights of subrogation through confirmation of insurance.

(emphasis in original).

[3] See La. R.S. 23:1032(A)(2).

Pursuant to the express language in the contract, we adopt neither Valiant nor OES' theory. Although the term "principals" is not explicitly defined in the "Definitions" section of the policy, we find that the term is defined within its own context. The key policy language is "on behalf of whom the Insured is providing services." Under this endorsement and subject to the enumerated limitations, a "principal" can only be someone for whom OES was providing services.

Here, to determine for whom OES was providing services, we must look to the OES/Anadarko MSA. Paragraph one specifically states that the agreement "shall control and govern all services performed by Contractor [OES] for Company [Anadarko]." (Doc. 264-3) (emphasis ours). OES does not even contend that it was actually providing services on behalf of Dolphin and/or Smith but simply that the MSA brings Dolphin and Smith within the ambit of OES' obligations to Anadarko. Just because OES may have agreed to contractually indemnify Dolphin and Smith as "Company Indemnitees" in the MSA, it does not automatically follow that OES was somehow also providing services for Dolphin and/or Smith. Thus, the only possible "principal" for purposes of Valiant's additional insureds endorsement is Anadarko.

Additionally, we note that OES' contractually assumed liability argument is irrelevant for purposes of this motion; however, our ruling here has no bearing on whether Dolphin and/or Smith qualify as additional insureds under Liberty Mutual's policy. Those arguments will be discussed below. Accordingly, we find that Dolphin and Smith are not additional insureds under Valiant's "Additional Insureds/Waiver of Subrogation" endorsement. Valiant's motion for summary judgment regarding additional insured coverage will be granted.

IV. **Valiant's Motion for Summary Judgment Regarding OES' Claims for Contractual Liability Coverage (Doc. 266)**

In its next motion for summary judgment, Valiant asserts that liability assumed by OES under contract "specifically is precluded from coverage under Valiant's Policy, unless Liberty Mutual also provides such coverage, in which case coverage is provided pursuant to the limitations under Valiant's Policy." (Doc. 266, p. 7). OES primarily agrees that the Contractor's Endorsement under Valiant's policy follows form to the Liberty Mutual Policy but disagrees that the Contractor's Endorsement is subject to further limitations contained in Valiant's policy.[4] Valiant offers two arguments for why Liberty Mutual's policy does not provide such coverage.

First, Valiant avers that Liberty Mutual's policy does not provide coverage to OES for any liability contractually assumed by OES for Anadarko's contractually assumed obligations to defend and indemnify Dolphin and Smith. This argument has been considered in one of our previous rulings. (See Doc. 125). In that ruling, we found that the contractual liability endorsement in Liberty Mutual's policy only covers an "insured contract" where OES assumed the tort liability of another party. Specifically, we stated that "the only contract that can meet the definition of an 'insured contract' . . . is the OES/Anadarko contract, and then only to the extent OES might have assumed the *tort* liability of another party." According to the policy language, we held that OES is not "provided contractual liability coverage for any possible contractual obligation to Anadarko for any possible contractual liability of Anadarko allegedly owed to Smith or Dolphin."

Valiant is now anticipating OES' argument that this previous ruling was altered by our later ruling allowing reformation. (See Doc. 242). It was not. In our reformation ruling, we allowed the parties to reform the definition of "Company Indemnitees." The definition of

---

[4] Whether or not the Contractor's Endorsement is subject to other limitations in Valiant's policy is discussed below pertaining to Valiant's Motion for Summary Judgment on the Drilling Rig Exclusion.

"Company Indemnitees" has no bearing on whether Liberty Mutual's policy provides coverage for Anadarko's contractual obligations to Dolphin and Smith. Thus, as we previously held, Liberty Mutual's policy does not provide such coverage. This portion of Valiant's motion will be granted.

Secondly, however, Valiant argues that Liberty Mutual's policy does not provide coverage for any of Dolphin or Smith's tort liability that was *directly* assumed by OES in the MSA. We did not decide this issue in our previous ruling, and, even if we had, we find that reformation substantially impacts whether the Liberty Mutual policy—and thus Valiant—provides coverage for any tort liability that OES may have directly assumed in favor of Dolphin and Smith. As stated above, the contractual liability endorsement only provides coverage under an "insured contract" and only to the extent that OES assumed the tort liability of another party. In the OES/Anadarko MSA, which we have already found is an "insured contract" under the Liberty Mutual policy, OES agreed to "defend, release, indemnify, and hold harmless the company indemnitees" from any tort liability.[5] (Doc. 266-5, p. 4).

---

[5] Paragraph 14(a) in the OES/Anadarko Master Service Agreement sates:

> Notwithstanding anything to the contrary in other provisions of this Agreement, CONTRACTOR AGREES TO BE RESPONSIBLE FOR AND ASSUME ALL LIABILITY FOR AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY, AND HOLD HARMLESS THE COMPANY INDEMNITEES AGAINST CLAIMS ARISING IN CONNECTION WITH: (I) BODILY INJURY AND/OR DEATH TO CONTRACTOR'S EMPLOYEES, CONTRACTOR'S SUBCONTRACTORS AND THEIR EMPLOYEES, AND CONTRACTOR'S INVITEES; AND/OR (II) DAMAGE TO PROPERTY OF CONTRACTOR'S EMPLOYEES AND CONTRACTOR'S SUBCONTRACTORS AND THEIR EMPLOYEES, AND CONTRACTOR'S INVITEES; ARISING OUT OF OR RESULTING FROM THE PERFORMANCE OF THIS AGREEMENT, REGARDLESS OF FAULT. THE INDEMNITY OBLIGATIONS SET FORTH IN THIS PARAGRAPH 14(a) SHALL INCLUDE ANY MEDICAL, COMPENSATION, OR OTHER BENEFITS PAID BY COMPANY OR ANY MEMBER OF COMPANY INDEMNITEES AND SHALL APPLY EVEN IF THE EMPLOYEE IS DETERMINED TO BE THE BORROWED OR STATUTORY EMPLOYEE OF COMPANY OR ANY OTHER MEMBER OF COMPANY INDEMNITEES.

At the time our previous ruling was handed down, Dolphin and Smith were not included in the definition of "Company Indemnitees" because they were arguably considered only "contractors" of Anadarko and not "subcontractors." However, after we allowed OES and Anadarko to reform the definition of "Company Indemnitees" to evidence their intent that "contractors" were included in the definition of "subcontractors," Dolphin and Smith now fall squarely within that definition. Under the terms of the Liberty Mutual contractual liability endorsement, we find that OES directly assumed the tort liability of Dolphin and Smith under an "insured contract."

As additional support, we note that Liberty's policy includes Dolphin and Smith as additional insureds under the "Blanket Additional Insured" endorsement. The endorsement states, "WHO IS INSURED is amended to include as an insured any person or organization for whom you have agreed in writing to provide liability insurance." OES and Anadarko agreed in the MSA that each party's general liability insurance policy will "name Company Indemnitees or Contractor Indemnitees, whichever is applicable, as additional insureds (except for Workers Compensation and Property Insurance)." As stated above, Dolphin and Smith fall within the definition of "Company Indemnitees," and since OES agreed to provide—and, in fact, did provide—liability insurance in the Master Service Agreement to all "Company Indemnitees," it is clear that Dolphin and Smith qualify as additional insureds under the Liberty Mutual policy.

These provisions in the MSA demonstrate to us that OES contractually assumed tort liability in favor of Dolphin and Smith under the contractual liability endorsement and even agreed to include both companies as additional insureds on its general liability insurance policy with Liberty Mutual. As to Valiant, it correctly states, "such liability specifically is precluded from coverage under Valiant's Policy, unless Liberty Mutual also provides coverage." Thus, addressing

Valiant's non-coverage argument, we find that, because Liberty Mutual's policy provides coverage for Dolphin and Smith under the contractual liability endorsement, so does Valiant's policy under the Contractor's Endorsement.

Valiant's only argument is unpersuasive.  Valiant simply requests that the court "deny OES and Anadarko the privilege of changing or reforming their [c]ontract."  In support of its motion, Valiant contends—just as Liberty Mutual argued in its most recent motion for summary judgment—that the recent Fifth Circuit case <u>Wilcox v. Wild Well Control, Inc.</u>, 794 F.3d 531 (5th Cir. 2015) demonstrates that reformation is not proper in this case.  We have already discussed these arguments at length in our ruling allowing reformation and in our ruling denying Liberty Mutual's motion for summary judgment. (<u>See</u> docs. 242 & 336).  We affirm that ruling and decline to revisit those arguments again.  This portion of Valiant's motion will be denied.

### V.    Valiant's Motion for Summary Judgment Barring Coverage by Operation of the Policy's Drilling Rig Exclusion

Lastly, Valiant asserts a bar to coverage based on an exclusion found in its policy, which provides:

> III.    Exclusions
>
> A.    This insurance does not apply to:
>
> *                    *                    *
>
> 11.    Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of:
>
> *                    *                    *
>
> d.    any liability or expense arising out of the ownership, use or operation of drilling

12

rigs, drilling barges, drilling
tenders, platforms, flow lines,
gathering stations and/or
pipelines, but this exclusion
shall not apply to craft serving
the foregoing as crew, supply,
or utility boats, tenders,
barges or lugs. (Doc. 275-4 at
p. 10).

Valiant claims that the BELFORD DOLPHIN, upon which the accident forming the basis

of this suit occurred, is a "drilling rig" or other enumerated excluded vessel or structure under its

policy and, as such, no coverage for any amounts paid by OES in conjunction with this the accident

is owed. Valiant offers the declaration of Ian Cairns ("Cairns"), wherein Cairns affirms that he

provided an expert report containing the opinion that the drill ship BELFORD DOLPHIN falls

within the generally prevailing meaning of the term "drilling rig[.]" (Doc. 322). Referring to the

Fifth Circuit's recent ruling in the matter of Cash v. Liberty Ins. Underwriters, Inc., No. 14-31072,

2015 WL 5172868 (5th Cir. Sept. 4, 2015), Valiant also avers that the exclusion is unambiguous

in its bar to coverage under the facts of this case.

OES disputes that the BELFORD DOLPHIN is a "drilling rig" and contends that it is,

instead, a "drill ship." OES argues for interpretation of the exclusion according to the principle of

*inclusio unius est exclusio alterius,* asserting that Valiant's specific inclusion of many other

drilling vessels and structures while specifically omitting drill ships indicates that the BELFORD

DOLPHIN does not fall within the exclusion. OES further argues that to construe the drilling rig

exclusion as encompassing all activity which may occur on any maritime vessel or structure is

overly-broad and creates an absurd result in light of OES' business as an oilfield service provider.

Additionally, OES disputes the relevancy of the exclusion, arguing that Valiant's policy affords coverage under Endorsement #5, entitled "Contractor's Endorsement" regardless of the drilling rig exclusion.  The Contractor's Endorsement provides, in pertinent part, that:

> It is agreed that the insurance afforded by this policy does not apply:
>
> 1.) To any liability for personal injury or property damage arising out of liability assumed by the Insured under any contract or agreement.
>
> *                              *                              *
>
> Unless insurance thereof is provided by a policy listed in the underlying insurance schedule, and then only for such coverage as is afforded by the policy.  (Doc. 275-4 at pp. 22-23).

OES claims that this endorsement's language results in Valiant's policy "following form" to the underlying Liberty Mutual policy, which does not contain the disputed drilling rig exclusion. Thus, OES asserts that, even if the court finds that the drilling rig exclusion applies to the facts of this case, it is irrelevant because coverage is extended to it via Endorsement #5 and, by incorporation, the underlying Liberty Mutual policy.

In addition to the substantive motion before the court, the parties have each filed a motion to strike, which we also consider here and must first resolve before moving on.  The first such motion, filed by OES, seeks an order striking the expert report of Ian Cairns, originally attached as Exhibit A to Valiant's memorandum in opposition to the instant motion.  (Doc. 295).  OES states two bases for its requested relief: (1) that Cairns' expert report is not admissible in evidence, constitutes hearsay, and is not subject to any exception to the hearsay rule; and (2) that Valiant's failure to put this evidence forward until its reply brief is highly prejudicial to OES, since Cairns has not been declared an expert in the case and sur-reply briefs are not permitted by this court.

In response to OES' motion to strike, Valiant sought leave to substitute its original Exhibit A (Cairns' expert report and attached materials) with a signed declaration by Cairns, to which Cairns attaches his expert report and related materials. This motion was granted. (Doc. 322). Though the court's grant of leave to substitute Cairns' declaration for the original Exhibit A to Valiant's reply brief cures the first defect about which OES complains, it does not cure the second. Valiant is the movant on this particular issue, having chosen not to assert coverage defenses until this very late date.[6]  While the court is aware of the merits of the "wait and see" approach for excess insurers, we note that this particular exercise is inequitable. The court is spurred on in this finding by the December 7, 2015 trial date, leaving the parties and the court little room to grant additional time for depositions, sur-replies and the like. For the foregoing reasons, OES' motion to strike Exhibit A to Valiant's reply brief will be GRANTED and, accordingly, Docs. 292-1 and 323 will be stricken from the record of this case and the court will disregard any reference to this exhibit in Valiant's reply brief.

The second motion to strike, filed by Valiant, seeks an order from us striking certain exhibits to OES' memorandum in opposition to Valiant's motion. (Doc. 321). Valiant complains that OES' citation to excerpts from a status conference transcript in the matter of Bross v. Chevron U.S.A. Inc., No. 06-1523, 2009 WL 854446 (W.D. La. Mar. 25, 2009) is inadmissible hearsay, under Fed. R. Evid. 801 and 802, as it is offered to prove the truth of the matter asserted. (Exhibit C at Doc. 281-3). Similarly, Valiant characterizes deposition testimony from the Cash case as inadmissible hearsay. (Exhibits J and K at Docs. 281-10 and -11). Finally, Valiant seeks to strike

---

[6] Valiant was named as a third-party defendant to this suit on January 27, 2014. (Doc. 171). Valiant asserted its coverage defenses in its original and amended answers, filed on April 21, 2014 (Doc. 183) and May 8, 2014 (Doc. 186), respectively. This suit was originally filed in 2011. Although a strategic decision belonging to the attorneys working on behalf of their clients, the court notes that declaratory relief regarding coverage was available as a remedy as early as 2011 and is not an unusual remedy sought by insurers before this court in similar suits.

the declarations of Toni Bazar and Samuel A. Broussard which Valiant claims concern "unrelated matters and/or lawsuits and irrelevant insurance policies not at issue here." (Exhibits I and L, Docs. 281-9 and -12). Aside from its arguments regarding hearsay, Valiant asserts that these objectionable exhibits are irrelevant and highly prejudicial and, thus, should be stricken from the record.

Having considered each of Valiant's arguments, we find that its motion should be granted in part and denied in part. As to Exhibit C, we agree that a transcript of Judge Doherty's thoughts during a status conference held in another unrelated litigation are inappropriate for inclusion in this matter. Valiant's motion will be granted in this regard and Exhibit C will be stricken from the record of this case. Regarding Exhibits J and K, deposition testimony of Joseph C. Morency and John Kirchhofer given during the Cash case, we find that these exhibits must also be excluded. While the Cash case is factually similar to the instant matter, that similarity does not justify incorporation of portions of the record in that matter. As to Exhibit I, the declaration of Toni Bazer, the court finds that paragraphs 10–14 of the declaration should be stricken because they concern unrelated litigation or offer conclusions of law. Valiant's motion is, therefore, granted in part and denied in part as to Exhibit I. As to Exhibit L, the declaration of Samuel A. Broussard, the court finds that paragraphs 7–11 should be stricken from the record of this case because they likewise concern unrelated litigation or offer conclusions of law. Valiant's motion is, therefore, also granted in part and denied in part as to Exhibit L.

Having resolved the evidentiary issues before us, we can now return to the merits of Valiant's underlying motion for summary judgment. When considering claims involving insurance policies, we begin with foundational precepts of law. Valiant asserts, and OES does not dispute,

that Louisiana law applies to the interpretation of the Valiant policy.[7]   We agree and proceed accordingly.

"Under Louisiana law, an insurance policy is a contract between the parties, and it should be construed according to the general rules of contract interpretation set forth in the Civil Code." Riverwood International Corp. v. Employers Insurance of Wausau, 420 F.3d 378, 382 (5th Cir. 2005) citing Louisiana Insurance Guaranty Assn. v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). The words of a contract are to be construed according to their plain and ordinary meaning, unless the words have acquired a technical meaning. La. Civ. Code art. 2047. An insurance contract should be construed as a whole and its provisions should be interpreted in light of one another and given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050; Green ex rel. Peterson v. Johnson, 149 So. 3d 766, 775–76 (La. 2014) citing Sims v. Mulhearn Funeral Home, Inc., 956 So. 2d 583, 589 (La. 2007). Thus, an insurance policy and its endorsements are parts of a single contract and must be construed together. Mattingly v. Sportsline, Inc., 720 So. 2d 1227, 1230 (La. App. 5 Cir. 1998). If there is a conflict between the policy and its endorsement, the endorsement prevails, so that if the policy provides coverage, but the endorsement excludes coverage, coverage is excluded. Zeitoun v. Orleans Parish School Board, 33 So. 3d 361 (La. App. 4 Cir. 2010).

As noted, we have carefully reviewed Valiant's policy and the arguments of the parties. We find that the endorsement at issue narrows the coverage afforded by the policy by restricting coverage for liability assumed by the Insured under a contract to only that which is also provided by a policy listed in the underlying insurance schedule. (Doc. 275-4 at pp. 22–23).   The

---

[7] Doc. 265-1, p. 4.

endorsement goes on to further narrow such coverage by making it subject to three enumerated exceptions, none of which pertains to the drilling rig exclusion at issue. (Id.)

In so finding, we specifically reject OES' argument that the Contractor's Endorsement language, "unless insurance thereof is provided by a policy listed in the underlying insurance schedule, and then only for such coverage as is afforded by the policy[,]" has the effect of transforming Valiant's entire policy into a following form policy mirroring the underlying Liberty Mutual policy. (Doc. 281 at p. 4). A following-form policy adopts the terms and conditions of another insurance policy. Bryan A. Garner, Black's Law Dictionary, 926 (10th ed. 2014). An excess carrier writing a following form policy may designate exceptions to coverage provided in the underlying primary policy, but must do so expressly. Orleans Parish School Board v. Lexington Ins. Co., 95 So.3d 1205, 1209 (La. App. 4 Cir. 2012).

The language of the Contractor's Endorsement is complex, but not ambiguous. It begins by excluding coverage for, among other things, "…any liability for personal injury or property damage arising out of liability assumed by the Insured under any contract or agreement." (Doc. 275-4 at pp. 22–23). Thereafter, this endorsement creates a narrow exception to its own coverage exclusions, allowing coverage for some contractual liability when "…insurance thereof is provided by a policy listed in the underlying insurance schedule, and then only for such coverage as is afforded by the policy." (Id.) Finally, the exception is further narrowed by the addition of three more exceptions, as to which coverage is again excluded:

> (1)   Any liability for physical injury to or destruction of, or loss of use of:
>
> > (1.1)   leased or rented equipment or any property in the care, custody or control of the insured.
> >
> > (1.2)   property being transported, installed, erected, or worked upon by the Insured;

(2)     Any liability for personal injury or property damage arising out of any project insured under a "Wrap-up" rating plan or any similar rating plan;

(3)     Any liability for personal injury or property damage arising out of professional services performed by, for or on behalf of the Insured in connection with preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, including supervisory, inspection or engineering services in connection therewith. (Doc. 275-4 at p. 23).

Given the language of the Contractor's Endorsement cited above, we find that the Valiant policy at issue is follow form to the underlying Liberty Mutual policy with respect to the narrow class of contractual liability which is not otherwise expressly excluded by the endorsement itself. Again, we reject the argument this endorsement supplants the entirety of the policy, including the drilling rig exclusion, so as to make the entire policy follow form to underlying coverage. The Contractor's Endorsement is unambiguous in its particularity and needs no further interpretation. La. Civ. C. Art. 2046; Cadwallader v. Allstate Ins. Co., 848 So.2d 577 (La. 2003); Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 630 So.2d 759 (La. 1994).

Having determined that the Contractor's Endorsement does not completely upend the general policy provisions, we now address whether or not the drilling rig exclusion applies as a bar to coverage in this case. As we observed above, Valiant urges that the BELFORD DOLPHIN is a "drilling rig" within the meaning of the policy exclusion, though it is a drillship. OES counters that the BELFORD DOLPHIN is not a "drilling rig" within the meaning of the exclusion because the term "drillship" is not listed among the various drilling structures and vessels found in the exclusion. Arguing the maxim "*inclusio unius est exclusio alterius*" OES points out that any ambiguity in Valiant's decision not to list drillships among the excluded structures and vessels

19

should be strictly construed against Valiant as the insurer, according to well-settled precepts of insurance interpretation.

We find that the term "drilling rig" is unambiguous and clearly encompasses within its generally prevailing meaning both fixed and floating rigs, including drillships, which are a type of floating rig. (Doc. 265-1 at p. 6, n. 23, 24). Thus, we find that the drilling rig exclusion applies to the claims at issue in this case and is a bar to coverage.

In Cash, the Fifth Circuit rejected arguments by an oilfield service provider, Max Welders, that the drilling rig exclusion did not apply to the claim in that case because the platform upon which the accident occurred was not being used extract energy at the time, but instead for transport purposes. The appellate court held that the platform, no matter the type of "use" for which it was being engaged, was sufficient to trigger the drilling rig exclusion contained in the policy, which is identical to the drilling exclusion in Valiant's policy in the instant matter. Cash, 2015 WL 5172868, *5-6. Based on the Fifth Circuit's reasoning in Cash, we also reject OES' alternative argument that the piece of casing that fell on Plaintiff causing his injury was not fixed to the drilling rig and, thus, the drilling rig exclusion may not apply. As expressed by the appellate court in Cash, the drilling rig exclusion acts as a bar to liability "arising out of the ownership, use or operation of drilling rigs" and so we find that this exclusion would clearly encompass the facts of this case, regardless of whether or not the particular object that caused Plaintiff's injury was a fixed or moveable object, given that Plaintiff was undisputedly working on the BELFORD DOLHPIN drillship at the time of the accident. Id.[5]

---

[5] In its ruling in Cash, the Fifth Circuit focused exclusively on the issue of whether or not the drilling rig exclusion was ambiguous in the inclusion of the word "use" and, as we have recited above, found no ambiguity in that term. Though not discussed in its ruling, the Circuit also necessarily rejected the district court's finding that the application of the drilling rig exclusion to Max Welders – an oilfield service provider - under the broadest possible definition of the word "use" created an absurd result in that it would mean that "virtually no coverage would be available for Max Welders declared and known work activities." Cash, 2012 WL 3061853, at *16 (W.D. La. 2012). This court is

## VI.    Conclusion

For the foregoing reasons, (1) Valiant's Motion for Summary Judgment regarding additional insureds coverage (Doc. 264) will be **GRANTED**; (2) Valiant's Motion for Summary Judgment regarding OES' claims for contractual liability (Doc. 266) will be **GRANTED in part** and **DENIED in part**; and (3) Valiant's Motion for Summary Judgment regarding the drilling rig exclusion (Doc. 265) will be **GRANTED**.   OES' motion to strike (Doc. 295) will be **GRANTED** in full and Valiant's motion to strike (Doc. 321) will be **GRANTED** in part and **DENIED** in part.

**SIGNED** on this 2ND day of December, 2015 at Alexandria, Louisiana.


                                        DEE D. DRELL, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT

---

bound to apply the law in conformity with the precedent handed down to us.  We note, however, that it seems to us that the policies being sold to oilfield service providers such as Max Welders and OES are not likely the coverage bargained for by these insureds in light of the drilling rig exclusion.  Moreover, this court anticipates future suits regarding the inescapable issue of misrepresentations which may or may not have been made to consumers regarding the coverage afforded by these policies in the marketplace.  It seems clear that these policies are being portrayed inaccurately.  The more difficult question is, "by whom?"