U.S. DISTRICT COURT
ESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 1 5 2015

TONY R. MOORE, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RAYLIN RICHARD | CIVIL ACTION NO. 6:11-cv-0083 |
| -vs- | |
| ANADARKO PETROLEUM CORPORATION, DOLPHIN DRILLING LTD., HUNTING ENERGY SERVICES, INC., AND SMITH INTERNATIONAL, INC. | JUDGE DRELL<br><br>MAGISTRATE JUDGE KIRK |

## RULING

### I. Coverage Provided by Liberty Mutual's Policy

On December 7, 2015, a one-day bench trial was held in Lafayette, Louisiana to hear evidence and argument on the final issues in this case. We first took evidence regarding the insurance coverage provided under the Liberty Mutual (Liberty) policy and pertaining to the details of the settlement between Raylin Richard, the original plaintiff, and the business Defendants. The primary issue we have been faced with throughout this litigation is whether the Liberty policy provided insurance coverage to Dolphin Drilling Ltd. (Dolphin) and Smith International, Inc. (Smith).

In the first ruling on this issue, Judge Doherty held that the Liberty policy did not provide coverage for the defense and indemnity of Dolphin and Smith. (Doc. 125). Thereafter, the case was transferred to this division. In a ruling dated March 24, 2015, we granted Defendants' Motions for Reconsideration pertaining to Judge Doherty's previous ruling and allowed Offshore Energy Services (OES) and Anadarko Petroleum Corp. (Anadarko) to reform the Master Service

1

Agreement (MSA) between them to reflect their true intent to effect a "knock for knock" indemnity scheme. (Doc. 242). OES then filed an Amended Cross Claim against Liberty, which contained the reformed definition of "Company Indemnitees" in the OES/Anadarko MSA. (Doc. 326). Finally, we held in two separate rulings that the language set forth in OES' amended cross claim "is, and will remain" final for purposes of the reformation allowed and that "Dolphin and Smith now fall squarely within that definition." (See Docs. 336, 386).

In light of our previous rulings and the evidence produced at trial, we find that the Liberty policy provides coverage—up to the policy limits—for Plaintiff's bodily injury damages that Dolphin and Smith were legally obligated to pay.[1] Here, Plaintiff settled his case with the non-insurance Defendants, which settlement all parties at trial stipulated was reasonable, in the amount of $2,500,000. (Doc. 395-7). The Liberty policy provided up to $1,000,000 in bodily injury coverage for each occurrence less a $100,000 deductible, which the insured—here, OES—was obligated to pay. (Doc. 395-1). The only defense put on by Liberty at trial was its longstanding objection to our ruling allowing reformation. (See Docs. 242, 336, 386). We do not further consider our ruling allowing reformation. Accordingly, we find that Liberty must pay to OES $900,000 under the policy coverage resulting from the settlement of Plaintiff's bodily injury claim.

## II. Attorney's Fees

The seriously contested issue at trial was the amount of attorney's fees that Liberty is obliged to pay for the defense costs of OES, Dolphin, and Smith. The Liberty policy contains a general policy provision and two endorsements which govern "Supplementary Payments." Those

---

[1] It is important to note that OES paid the entire settlement and received a "Subrogation and Assignment Agreement" from both Dolphin and Smith, which authorized OES to pursue any claims that Dolphin and/or Smith had against Liberty Mutual. (See Docs. 395-7, 395-6). Thus, any sums due to Dolphin and/or Smith by Liberty Mutual under its policy are properly paid to OES. (See Doc. 386, p. 6–7 (providing the reasoning OES has the ability to pursue the claims of Dolphin/Smith)).

2

payments include defense costs. The general policy provision—titled "Supplementary Payments – Coverages A and B" (Supplementary Payments provision)—provides, in pertinent part, that Liberty "will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend: a. all expenses we incur." (Doc. 395-1). However, there are also two endorsements, which conflict with one another, and which change the general supplementary payments provision.

Endorsement 3 is titled "Deductible – Damages (Pro-Rata Supplementary Payments) and provides a formula in Paragraph B which is used to calculate Liberty's "proportionate share of the Supplementary Payments." Endorsement 3 then states, "Paragraph 1 of SUPPLEMENTARY PAYMENTS COVERAGES A AND B is amended to reflect your responsibility to pay SUPPLEMENTARY PAYMENTS as described in paragraph B above." (Id.).

On the other hand, paragraph 3 in another Endorsement (#34) purports to entirely replace the "Supplementary Payments – Coverages A and B" general policy provision with a new provision, which provides that Liberty will pay *all* of the expenses it incurs "with respect to any claim we investigate or settle, or any 'suit' against an insured we defend." (Id.). The difference between the two endorsements is that if Endorsement 3 is applied, the fees owed are $168,695.96, and if Endorsement 34 is applied the fees are $468,599.90.

In advance of trial, the parties noted they were in disagreement as to which endorsement should govern the amount of attorney's fees Liberty was obligated to pay in defense of OES, Dolphin, and Smith. Both counsel for OES and Liberty insisted that a trial on the merits was needed for the court to resolve this issue. At trial, counsel for Liberty maintained that, under Endorsement 3, the pro-rata formula must be applied to the total amount of attorney's fees. However, when asked to resolve the apparent conflict between Endorsement 3 and Endorsement 34, counsel could only repeatedly tell the court that we must "read the policy as a whole." In

response, counsel for OES argued that the full amount of attorney's fees should be awarded because the policy is ambiguous on this issue due to the conflicting policy provisions and should be construed against the insurer.

We assume that Liberty meant to say that, under Louisiana law, an insurance policy and its endorsements are part of a single contract and must be construed together. Mattingly v. Sportsline, Inc., 720 So. 2d 1227, 1230 (La. App. 5 Cir. 1998). Insurance contracts should be construed as a whole and its provisions should be interpreted in light of one another and given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050; Green ex rel. Peterson v. Johnson, 149 So. 3d 766, 775–76 (La. 2014) (citing Sims v. Mulhearn Funeral Home, Inc., 956 So. 2d 583, 589 (La. 2007)). However, when policy provisions in an insurance contract are susceptible of two or more reasonable interpretations, the provisions are ambiguous. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759 (La. 1994). Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003).

We first note that each of the Endorsements state, "[t]his endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE FORM [PART]." (Doc. 395-1). Specifically, Endorsement 3 amends paragraph 1 of the Supplementary Payments provision, and Endorsement 34 purports to entirely replace the Supplementary Payments provision. Liberty's argument seems to be that Endorsement 34 is conditioned and limited by Endorsement 3. When read together, we can reasonably read the policy in two ways: 1) The replacement Supplementary Payments provision in Endorsement 34 is modified by the pro-rata formula in Endorsement 3 such that the pro-rate formula applies; or 2) Endorsement 3 amends

4

paragraph 1 of the Supplementary Payments provision but Endorsement 34 completely replaces that provision such that the pro-rata formula does not apply.

We find that both of these interpretations are reasonable because there is no mention anywhere in the policy that either the replacement provision in Endorsement 34 or the amended provision in Endorsement 3 primes the other. Because Liberty wrote the policy, it could have drafted the endorsements in such a way that the replacement Supplementary Payments provision in Endorsement 34 would clearly be subordinate and subject to the pro-rata formula contained in Endorsement 3. See Primrose Operating Co. v. National American Ins. Co., 382 F.3d 546, 558–59 (5th Cir. 2004). By providing conflicting endorsements and by not giving us any way to resolve the conflict, it is improper to allow Liberty to now dictate how they should be read. Thus, we must resolve this conflict in favor of the insured and award OES all of its attorney's fees incurred in defending itself, Dolphin, and Smith. The two witnesses at trial testified the awardable amount is calculated at $468,599.90.

### III. Conclusion

For the foregoing reasons, judgment on the principal demand will be rendered in favor of Offshore Energy Services, Inc. and against Liberty Mutual Insurance Co. in the full sum of $900,000 with legal interest as allowed by law. Further, judgment will be rendered in favor of Offshore Energy Service, Inc. and against Liberty Mutual Insurance Co. in the sum of $468,599.90 representing an award of reimbursable attorney's fees pursuant to the insurance policy.

SIGNED on this 15th day of December, 2015 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT